UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYNE J. PAGGEOT,

    Plaintiff,

v.                                                                        Case No. 1:09-cv-794

                                                                        Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
                                          /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on November 21, 1947 (AR 74),[1] and is a high school graduate (AR 643). Plaintiff alleged a disability onset date of January 1, 2000 (AR 74). He had previous employment as the owner/operator of a sign shop, postal carrier and sales associate at a Home Depot store (AR 643-44, 667-70). Plaintiff identified his disabling conditions as anxiety, depression, an enlarged prostate, arthritis in the back and neck, pain in the back and neck, heel spurs, left shoulder pain, bipolar disorder and past history of substance abuse (AR 647-51, 654, 657). On September 23, 2008, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision

---

[1] Citations to the administrative record will be referenced as (AR "page #").

denying benefits (AR 16-26).² This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful

---

² Plaintiff's claim for SSI was "technically denied due to his inability to qualify" (AR 16). For this reason the only issue addressed on appeal is plaintiff's claim for denial of DIB.

activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ'S DECISION

At step one, the ALJ found that while plaintiff met the insured status requirements of the Social Security Act through December 31, 2009, the record was inconclusive as to whether he engaged in substantial gainful activity since the alleged onset date of January 1, 2000 (AR 18). The ALJ noted that plaintiff reported earnings in 2000 ($4,000), 2001 ($4,000), 2002 ($6,000) and 2004 ($7,427) (AR 18). Because the agency's field office did not develop the claimant's work activity, the ALJ's finding at step one was reserved "with the right to re-visit this issue if circumstances so warrant" (AR 18-19). At step two, the ALJ found that plaintiff suffered from severe impairments of: arthritis; affective disorder; marijuana abuse; and "Lorcet abuse by history and current Vicodin use" (AR 19).

At step three, the ALJ found that:

> The claimant's impairments, including substance use disorder, fulfill the medical severity requirements of Listing 12.09 [Substance addiction disorders] and effectuated by Listing 12.08 [Personality disorders] and 12.09 [in the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1].

(AR 19). In this regard, the ALJ found that plaintiff "has a pathological dependence upon chemical substances" (AR 19). The ALJ also found that if plaintiff stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and that he would continue to have a severe impairment or combination of impairments (AR 21). The ALJ further found that if plaintiff stopped the substance use, he would <u>not</u> have an impairment or combination of impairments that met or equaled the requirements of the impairments in the Listing of Impairments (AR 21).

The ALJ decided at the fourth step that if plaintiff stopped the substance use, he would have the residual functional capacity (RFC):

4

> [T]o perform unskilled, medium work as defined in 20 CFR 404.1567(c), not requiring the performance of more than simple tasks. He needs to work in small groups of workers.

(AR 22-23). The ALJ also found that if plaintiff stopped the substance use, he would be unable to perform any of his past relevant work (AR 24).

At the fifth step, the ALJ determined that, assuming the absence of substance use, plaintiff could perform a significant number of jobs in the national economy (AR 25-26). Specifically, plaintiff could perform 25,000 medium, unskilled assembly and manufacturing jobs in the region of Michigan such as fabricator, packer and machine tender (AR 25).

The ALJ determined that plaintiff would not be disabled without the substance use (20 C.F.R. § 404.1520(g)) and that the substance use is a contributing factor material to determination of disability (20 C.F.R. § 404.1535) (AR 26). Accordingly, the ALJ found that plaintiff was not eligible for disability benefits under the Social Security Act (AR 26).

### III. ANALYSIS

Plaintiff has raised two related issues on appeal:

**A.   The ALJ's decision is not supported by substantial evidence because plaintiff's symptom complaints were inappropriately attributed to alcohol and substance abuse rather than his well documented depression.**

**B.   Appropriate weight was not given to the opinions of plaintiff's treating psychologist.**

### 1. ALJ's findings regarding substance abuse

The issue before the court is whether plaintiff suffered from a disabling condition in the absence of substance abuse. In defining the term disability, 42 U.S.C. § 423(d)(2)(C) provides that:

> An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

The ALJ found that plaintiff's substance use disorder met the requirements of a personality disorder under Listing 12.08 and a substance addiction disorder in Listing 12.09 (AR 19-20). To meet the requirements under Listing 12.09, a claimant must demonstrate "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." The Listing further provides that:

> The required level of severity for these disorders is met when the requirements in any of the following (A through I) are satisfied.
>
> \* \* \*
>
> D. Personality disorders. Evaluate under 12.08.

20 C.F.R., Pt. 404, Subpt. P, App. 1. Here, the ALJ found that plaintiff's pathological dependence upon chemical substances met the "A" criteria of Listing 12.08 (AR 20). In addition, plaintiff met the "B" criteria of Listing 12.08 because he had a marked restriction in activities of daily living and marked difficulties in concentration, persistence or pace due to his long-term marijuana abuse (AR 20).

Nevertheless, the ALJ concluded that absent the substance use, plaintiff was not disabled (AR 19-20). The evaluation process for determining whether a claimant is disabled due to substance abuse is set forth in 20 C.F.R. § 404.1535, which provides as follows:

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.
>
> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.
>
>> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.
>>
>> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. § 404.1535.

In determining that the substance abuse was a contributing factor to plaintiff's disabling limitations, the ALJ found: that plaintiff formerly smoked marijuana on a daily basis; that he last smoked marijuana in December 2007; that he used his girlfriend's Lortab "for fun" despite

7

the absence of pain; that he obtained longstanding prescriptions for Vicodin despite the absence of objective physical findings; and that in mid-2004, plaintiff did not take certain prescribed medication (Depakote) because he obtained marijuana and did not want to mix it with the medication (AR 19). In reaching this determination, he ALJ relied on the opinions of provided by plaintiff's treating physicians Cindy Bos, M.D., and C.V. Krishnamoorthy, M.D.:

> The Administrative Law Judge has extended controlling weight to the opinions provided by Dr. Bos and Dr. Krishnamoorthy of the Veterans Administration. Both are treating sources and acknowledged the role that on going substance abuse had played and was playing. Exhibit 11F, 15F.

(AR 24).

In reviewing the decision, the court notes that the ALJ did not cite to specific portions of the two cited exhibits, i.e., 11F (AR 276-594) and 15F (AR 618-29), which combined contain over 300 pages of treatment notes.[3] In his brief, defendant could only locate two documents from this large collection of medical records to cite in support the ALJ's determination that plaintiff was not disabled in the absence of substance abuse. First, defendant cites a record June 2, 2004, when Dr. Krishnamoorthy observed that plaintiff did not take Depakote as prescribed (AR 513). Plaintiff stated that "he got some pot and was smoking the same" and that "he did not want to mix pot with medication (Depakote)" (AR 513). Plaintiff stated that "he will be finishing the remainder of the marijuana in a couple of days and plan [sic] to start taking the Depakote" (AR 513). The doctor informed plaintiff that "if he plan [sic] to abuse marijuana on a regular basis, I will not prescribe meds for him since it is difficult to make a correct [diagnosis]" (AR 513). The doctor further observed that "the symptoms he describes could be due to substance abuse" (AR 513). Second,

---

[3] The ALJ's blanket citation to 300+ pages of medical records is unhelpful to a court reviewing the administrative decision. The failure to identify specific records in support of an administrative decision presents a "red flag" to the court that substantial evidence may be lacking.

defendant cites a December 28, 2007 treatment note from Dr. Bos, which mentions that plaintiff stopped smoking marijuana about three years before that date and references polysubstance dependence as one of plaintiff's 18 active problems (AR 623).

### 2. Plaintiff's alleged errors

Plaintiff contends that the ALJ made errors in evaluating the evidence of his treating physicians, Dr. Bos, Matthew Zarantonello, Ph.D, and Rosemarie Ann Facilla, ACSW, LMSW.

#### a. Legal standard

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). The agency regulations provide that if the Commissioner finds that a treating medical source's opinion on the issues of the nature and severity of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [the Commissioner] will give it controlling weight." *Walters*, 127 F.3d at 530, *quoting* 20 C.F.R. § 404.1527(d)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994); 20 C.F.R. § 404.1526. Finally, the ALJ must articulate good reasons for

9

not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004).

### b. Dr. Bos

First, plaintiff contends that the ALJ ignored an observation by Dr. Bos on March 8, 2005 that he "[l]ikely had depression for many years, initially treating it with self medication with ETOH [alcohol] and then marijuana" (AR 452). To place this statement in context, the court notes that three days earlier, Dr. Bos determined that in addition to polysubstance dependence, plaintiff had 12 other "active problems": calcaneal spur; neck pain; male erectile disorder; loss of weight; "[o]ther unspecified diseases of nail; Bipolar I Disorder, Mixed, Unspec; GERD; anxiety disorder not specified; relux esophagitis; BPH w/o urinary obstruct; backache unspecified; and "[o]ther disorders of coccyx" (AR 451-52). In addition, plaintiff required "screening for other specified mental disorders and developmental handicaps" (AR 451).

Defendant relies on a statement made about two and one-half years later, on December 28, 2007, in which plaintiff reported that he quit smoking marijuana about three years before that date and had suffered from depression for 7 to 8 years without much change (AR 623). While Dr. Bos determined that plaintiff's "active problems" at the time included polysubstance abuse, she noted 17 other "active problems": dyspnea; malaise and fatigue; arthralgia; major depression, recurrent; social phobia; pain in joint involving shoulder region; dysphagia; calcaneal spur; neck pain; male erectile disorder; loss of weight; "[o]ther unspecified diseases of nail; GERD; reflux esophagitis; BPH w/o urinary obstruct; backache unspecified; and "[o]ther disorders of coccyx" (AR 623).

10

While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984). Here, the ALJ did not identify any particular record generated by Dr. Bos to support his conclusion that plaintiff was not disabled in the absence of substance abuse. While Dr. Bos noted that plaintiff had polysubstance dependence, she also found that he had 17 other active medical problems. Under these circumstances, the ALJ did not provide any meaningful discussion of the doctor's treatment as reflected within the 300+ pages of medical records. Accordingly, this matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Bos' opinions on whether plaintiff's depression was independent of his substance abuse.

### c. Dr. Zarantonello

Plaintiff points out that the ALJ did not address the opinions of Dr. Zarantonello, a treater at the VA (AR 459-62). In a neuropsychological evaluation by the doctor on February 14, 2005, plaintiff stated that he had a prior history of alcohol and marijuana abuse, but had been "totally abstinent from marijuana for about one year" (AR 460). The doctor noted that despite this substance abuse history, plaintiff had been prescribed "4-5 Vicodin per day" (AR 460). Dr. Zarantonello concluded that plaintiff was suffering from depression:

> Mr. Paggeot's memory test performance was variable, as is commonly seen in individuals suffering psychiatric conditions, and he reported a severe level of

depressive symptomology at the time of the present evaluation. It is likely that his subjective experience of difficulties with memory is secondary to depression rather than any identifiable brain problem.

(AR 462). Dr. Zarantonello concluded that plaintiff's depressive symptomology was secondary to depression rather than some other "identifiable brain problem." This evaluation tends to support plaintiff's position that his limitations are the result of depression rather than another problem such as substance abuse. Accordingly, this matter should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for a re-evaluation of Dr. Bos' opinions on whether plaintiff's depression was independent of his substance abuse.

### d. Ms. Facilla

Third, plaintiff contends that the ALJ erroneously ignored the opinions of Rosemarie Ann Facilla, whom plaintiff refers to as his "primary psychiatric source." Ms. Facilla, a social worker, prepared a Psychiatric Review Technique Form (PRTF) on April 4, 2008, which concluded that plaintiff suffered from major depression which interfered with his judgment, concentration, "dependent work," relationships with others, the ability to cope with work stressors, the ability "to remember or understand complex and/or detailed instructions because of poor concentration," the ability to be reliable and motivate himself, his self motivation, and the inability to process information and follow tasks through to completions (AR 632-36).[4] In support of this argument, plaintiff contends that Ms. Facilla's conclusions are consistent with those of DDS examiner David Cashbaugh, M.A., L.L.P., who found that plaintiff had a Global Assessment of Functioning (GAF) score of 50, which the vocational expert found to be work preclusive (AR 275, 675-76).

---

[4]Although the form Ms. Facilla completed bore the title "Psychiatric Review Technique Form (PRTF)", it was not the "PRTF" form used by the agency to evaluate claims of psychiatric impairments (AR 241-54).

As a social worker, Ms. Facilla's opinion is not entitled to the deference and controlling weight afforded to an acceptable medical source such as a treating physician. *See* 20 C.F.R. § 404.1513(a). Rather, as a social worker, Ms. Facilla is one of the "other sources" considered by the Commissioner. *Id.* at § 404.1513(d).

> Information from these "other sources" cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an "acceptable medical source" for this purpose. However, information from such "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.

SSR 06-03p.[5] Contrary to plaintiff's contention, Ms. Facilla's opinion was not entitled to controlling weight as a treating physician. Accordingly, plaintiff is not entitled to relief on this claim.

### IV.  Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to evaluate the opinions of Dr. Bos and Dr. Zarantonello as to whether plaintiff's depression was independent of his substance abuse.


Dated:  August 20, 2010                                /s/ Hugh W. Brenneman, Jr.
                                                       HUGH W. BRENNEMAN, JR.
                                                       United States Magistrate Judge

---

[5] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).